UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **LEONARD THOMAS WITHROW** | **CASE NO. 2:22-CV-00633** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **CHEVRON USA INC ET AL** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the Court is a Motion to Dismiss [Doc. 13] filed by defendant Vernon E. Faulconer, Inc. ("VEFI"), who moves to dismiss the following claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure:

(1) Claims for strict or absolute liability under Civil Code article 667 and Mineral Code Article 11;

(2) Claims for premises liability under Civil Code articles 2317 and 2322;

(3) Claims for civil fruits under Civil Code article 486;

(4) Claims for express and implied restoration obligations;

(5) Claims for breach of servitudes;

(6) Claims for failure to provide notice under Civil Code article 2688;

(7) Claims for damages for land loss, subsidence, and the cost of backfilling canals,

(8) Stand-alone claims under Louisiana Revised Statutes 30:29 ("Act 312");

(9) Claims for continuing tort, trespass, and nuisance;

(10) Claims pursuant to Section 324A of the Restatement (Second) of Torts;

(11) Breach of Stipulation for a Third Party; and

(12) Claims for unjust enrichment.

Plaintiffs oppose this motion [Doc. 19]. Accordingly, this motion is fully briefed and ready for ruling.

## BACKGROUND

Plaintiff, Leonard Withrow, filed a "legacy" lawsuit[1] in Louisiana state court, alleging that Defendants' historical oil and gas activities damaged his property. Doc. 1-2 *Petition for Damages filed in the 14th Judicial District Court for the Parish of Calcasieu.* Plaintiff asserts numerous claims against both Defendants and alleges that the Defendants, or their predecessors in interest, operated "pits, wells, sumps, pipelines, flowlines, tank batteries, wellheads, measuring facilities, separators, and injection facilities," on the property. *Id.* at ¶ 5. Plaintiff further alleges that the "improper disposal of oilfield wastes in unlined earthen pits," and "leaks, spills, and other surface and subsurface damages" from the aforementioned equipment or facilities have contaminated the property's soil and groundwater. *Id.* at ¶ 7.

Plaintiff's petition names two defendants: Chevron U.S.A. Inc. and Vernon E. Faulconer, Inc. ("VEFI"). Chevron is names as a successor in interest to Gulf Oil Corporation. *Id.* at ¶ 4. Plaintiff alleges that pursuant to a January 11, 1946, oil, gas, and mineral lease, Gulf Oil Corporation operated the wells from 1948 to 1987, when it transferred all of its interests to VEFI.

---

[1] "Legacy litigation" refers to the cases filed by landowners in recent decades seeking damages allegedly caused by historical oil and gas operations. *Marin v. Exxon Mobil Corp.*, 09-2368, 09-2371 (La. 10/19/10), 48 So. 3d 234, 238.

Defendants timely removed the case based on diversity jurisdiction. Doc. 1. *Notice of Removal.* Chevron now move to dismiss the claims pursuant to Rule 12(b)(6).

## RULE 12(b)(6) STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint when it fails to state a claim upon which relief can be granted. The test for determining the sufficiency of a complaint under Rule 12(b)(6) is that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curium) citing *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957).

Subsumed within the rigorous standard of the *Conley* test is the requirement that the plaintiff's complaint be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged. *Elliot v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989). The plaintiff's complaint is to be construed in a light most favorable to plaintiff, and the allegations contained therein are to be taken as true. *Oppenheimer v. Prudential Securities, Inc.*, 94 F.3d 189, 194 (5th Cir. 1996). In other words, a motion to dismiss an action for failure to state a claim "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1137 (5th Cir. 1992).

"In order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations . . ." *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). "Legal conclusions masquerading as factual conclusions will not suffice

to prevent a motion to dismiss." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). "[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995).

Under Rule 8 of the Federal Rules of Civil Procedure, the pleading standard does not require a complaint to contain "detailed factual allegations," but it "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007). A complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S.Ct. 1955.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S.Ct. 1955.

## LAW & ANALYSIS

### (1) Claims for strict or absolute liability under Civil Code article 667 and Mineral Code Article 11

Defendant argues that Plaintiff's claim against Chevron under Civil Code 667 fails because oil and gas exploration and production activities are not "ultrahazardous" within the meaning of the pre-1996 jurisprudence. *Ainsworth v. Shell Offshore, Inc.*, 829 F. 2d 548, 550 (5th Cir. 1987). Defendant asserts that oilfield activities are not ultrahazardous

because they can be, and routinely are, performed safely with exercise of reasonable care. *Hawkins v Evans Cooperage Co.*, 766 F. 2d 904, 907 (5th Cir. 1985).

Plaintiff has alleged in the Petition that "Defendants conducted 'various oil and gas exploration and production activities on the Plaintiff's property.'" Further, Plaintiff has alleged that oil and gas exploration and production activities conducted by Defendants included, amongst other activities, the operation of pits and handling, storage, discharge, and disposal of toxic and hazardous oilfield waste on the Plaintiff's property.

Plaintiff argues that it has a cause of action under Civil Code 667 for damages caused by ultrahazardous activity. Plaintiff points out that it acquired the land at issue before 1996, therefore, the amendment of Article 667's limiting ultrahazardous activity to pile driving or blasting does not apply to conduct that occurred prior to 1996. Plaintiff cites to *Updike v. Browning-Ferris, Inc.*, 808 F. Supp. 538, 544 (W.D. La. 1992), to maintain that the storage of hazardous waste in pits has been determined to be an ultrahazardous activity.

Plaintiff has also stated causes of action under Mineral Code Article 11. Article 11 provides a property law cause of action similar to La. C.C. 667. Article 11 states that "[t]he owner of land burdened by a mineral right or rights and the owner of a mineral right must exercise their respective rights with reasonable regard for those of the other." La. Rev. Stat. 31:11. Plaintiff argues that under this Article, a lessee may have to pay damages to the surface use for destruction of the surface pursuant to a lease clause imposing liability on the lessee or because the injury to the surface was caused by the lessee's negligence. Plaintiffs assert by leaving their pollution on the property, the Defendants have abused their mineral lease rights and have an obligation to restore the property.

Defendants argue that in stating the storage of hazardous waste in pits has been determined to be an ultrahazardous activity, Plaintiff relies solely on *Updike*. Defendants maintain that after *Updike* was decided, a Louisiana appellate court reached the opposite conclusion in *Bartlett v. Browning-Ferris Indus., Chem. Servs., Inc.* 92-218 (La. App. 3 Cir. 11/6/96).

Louisiana courts have held that there are some activities in which the risk may be altogether reasonable and still high enough that the party ought not undertake the activity without assuming the consequences. *See Kent v. Gulf States Utilities Co.*, 418 So.2d 493, 498 (La. 1982). Thus, the law imposes strict liability on these "ultrahazardous activities," meaning that the injured party recovers simply by proving damage and causation. In other words, liability is imposed as a matter of policy when harm results from the risks inherent in the nature of the activity. *Kent, supra.* While the Court recognizes that oil and gas exploration, production, and waste disposals are not typically considered ultrahazardous, the Court is not inclined to dismiss this cause of action until Plaintiffs are allowed to conduct proper discovery.

**(2) Claims for premises liability under Civil Code articles 2317 and 2322**

Defendant argues that under La. C.C. Art. 2317, Plaintiff must allege specific facts showing that damage was caused by a "defect" in an object in Chevron's custody. Under Louisiana law, a defect is a condition or imperfection that poses an unreasonable risk of injury to persons exercising ordinary care and prudence. *Renwick v. PNK Lake Charles, L.L.C.*, 901 F. 3d 605 (5th Cir. 2018). Defendant maintains that Plaintiff's vague assertions that the equipment and facilities utilized in Defendants' oil and gas exploration activities

are subject to spills, leaks, and discharges, do not meet Fifth Circuit precedent where oil and gas operations do not pose an unreasonable risk of injury to persons when ordinary care and prudence are exhibited.

Defendants further maintain that Plaintiff's claim under La. C.C. art. 2322 is flawed because the unidentified equipment that Chevron owned is not considered a "building," and even if it were considered a "building," none of the damage claimed was caused by any "ruin."

Plaintiff has alleged that the equipment and facilities of Defendant, including wells, pipelines, tank batteries, gas plants, and other equipment of facilities, were subject to leaks, spills, and discharges that resulted in the contamination at issue. Plaintiff has further alleged that the pits constructed by and used by Defendants to store oilfield wastes were defective in that said pits allowed oilfield waste to leak and seep into the surface and subsurface soils and waters.

The test for determining the sufficiency of a complaint under Rule 12(b)(6) is that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. As such, the Court is not inclined to dismiss this cause of action at this point.

### *(3) Claims for civil fruits under Civil Code article 486*

Defendant argues that Plaintiff's claims against Chevron for civil fruits fails because the alleged economic benefits derived from storage of oilfield waste on property without permission are not "civil fruits." *Wagoner v. Chevron USA Inc.*, 45, 507 (La. App. 2 Cir. 8/18/10), 55 So. 3d, 12, 27. Defendant maintains that even if Chevron avoided costs by

storing waste on the property, Plaintiff has no claim for civil fruits because "avoiding costs is not the same as earning revenues." *Alford v. Chevron U.S.A. Inc.* 13 F. Supp. 3d 581, 604 (E.D. La. 2014).

Defendant argues that the instant case is distinguishable from the authority that Plaintiff cited in that Plaintiff is not seeking recovery of "profits earned" but rather "costs avoided." The Court is persuaded by this argument and agrees. Accordingly, the claims for civil fruits under Civil Code Article 486 will be dismissed.

### *(4) Claims for express and implied restoration obligations*

Defendant argues that Plaintiff has not stated a claim for breach of an implied restoration obligation and argues additionally that Plaintiff conceded its claim for breach of express restoration provisions. Defendant points out that on p. 19 of Plaintiff's opposition, Plaintiff states that "none of the leases at issue have express restoration language…" As such, Defendant argues that Plaintiff's claim for breach of express restoration obligations should be dismissed.

Plaintiff maintains that under Louisiana law, if there are no express remediation provisions in the lease, the lessee is impliedly obligated by operation of law for remediation to pre-lease condition less normal wear and tear, and is further obligated to remediate damage resulting from unreasonable, negligent, or excessive operations. *Terrebonne Parish School Bd. v. Castex Energy, Inc.*, 893 So. 2d 789, 2004-0968 (La. 2005).

Plaintiff relies on the Louisiana Supreme Court's ruling in *Marin v. Exxon Mobil Corporation*, 48 So. 3d 234, 2009-2368 (La. 10/19/10), where the Louisiana Supreme Court noted that the implied restoration obligation of the mineral lessee is governed by the

substantive private law reflected in the Civil Code lease articles. Plaintiff asserts that under *Marin*, even when there is no proof or unreasonable or excessive operations, every lessee has the obligation to restore damage that exceeds normal wear and tear.

Accordingly, while the Plaintiff has admitted there is no express restoration obligation in the lease, the Court finds that the claim for an implied restoration obligation is adequate to withstand the Rule 12(b)(6) sufficiency test.

*(5) Claims for breach of servitudes*

Defendant argues that Plaintiff has no claim for breach of servitudes because no servitude exists. Plaintiff fails to identify any existing servitude, and the Lease attached to the Petition indicates that Chevron never owned such a servitude. Doc. 1-2.

Plaintiff concedes that "[t]hese allegations were made out of an abundance of caution…" Doc. 20 p. 23. Plaintiff argues that regardless of whether Defendant was a servitude owner, a mineral lease creates a real right with some characteristics in the nature of a limited personal servitude or right of use. The Court finds that Plaintiff's claims for breach of servitudes do not pass the Rule 12(b)(6) sufficiency test, and as such they will be dismissed.

*(6) Claims for failure to provide notice under Civil Code article 2688*

Defendant argues that the law expressed in La. C.C. art. 2688 is new and cannot be retroactively applied to any lease executed before the law became effective in 2005. Defendants further refute Plaintiff's assertions that even before article 2688 was enacted, the jurisprudence recognized a duty requiring lessees to inform their lessors of any damage that the lessees caused to the leased premises.

Plaintiff relies on *Bunge Corp. v. GATX Corp.*, 557 So. 2d 1376 (La. 1990), to support their argument that Defendant had a duty to provide notice. However, Defendants argues that in *Bunge*, the defendant manufactured a storage tank for the plaintiff and later learned that the tank had a hazardous defect. Relying on the "higher standard of accountability" of "builders, craftsmen, artisans and manufacturers" for products that they manufacture, the court held that the defendant had a duty to disclose the hazardous defect to the plaintiff. *Id*. at 1384–85. Absent from *Bunge* is any suggestion that this duty could arise in the context of a mineral lease. The Louisiana Supreme Court has rejected such an extension of that case. In *McCarthy v. Evolution Petroleum Corp.*, 2014-2607 (La. 10/14/15), 180 So. 3d 252, the Louisiana Supreme Court reversed the lower court's judgment, which had relied on *Bunge*, and held that "disclosure of information" is not one of the duties owed by mineral lessees to their lessors. Id. at 258–59.

Accordingly, the Court finds that Plaintiff's claims for failure to provide notice do not pass the Rule 12(b)(6) sufficiency test, and as such they will be dismissed.

***(7) Claims for damages for land loss, subsidence, and the cost of backfilling canals***

Defendant argues that Plaintiff has not alleged any facts suggesting that it engaged in activities that caused land loss or subsidence or that Plaintiff's property had suffered any land loss or subsidence.

Plaintiff suggests that Defendant's motion to dismiss should be denied in this regard as land loss, subsidence, and the cost of backfilling of canals and other excavations are not causes of action, but items of damage suffered by Plaintiff as a result of the wrongful conduct of Defendant. The Court is persuaded by this argument and agrees that Plaintiff

will be required to prove these damages at the trial of this matter, and Defendants will have the opportunity to refute them.

### *(8) Claims under Louisiana Revised Statutes 30:29 ("Act 312")*

Act 312 is not a substantive amendment of the law and does not create a cause of action or divest a plaintiff of any causes of action. *State v. Louisiana Land and Exploration Co.*, 2012-0884 (La. 1/30/13). Act 312 provides a procedure "for judicial resolution of claims for environmental damage." LSA-R.S. 30:29(A).

Plaintiff has made a judicial demand arising from or alleging environmental damage, as such, the procedures set forth in Act 312 apply to this case unless the finder of fact determines that there is no environmental damage. The Court agrees with Plaintiff's argument for the application of Act 312.

### *(9) Claims for continuing tort, trespass, and nuisance*

Defendants argue that Plaintiff fails to state a claim against Chevron for continuing tort, continuing trespass, or continuing nuisance because the operating cause of the alleged injury is not continuous.

Under Louisiana law, to determine whether injurious conduct constitutes a continuing tort, "the court must look to the operating cause of the injury sued upon and determine whether it is a continuous one giving rise to successive damages, or whether it is discontinuous and terminates, even though the damage persists and may progressively worsen." *Marin*, 48 So. 3d at 253.

Plaintiffs refute Defendant's argument and assert that Defendant's continuing tort argument only has bearing on tort claims and Plaintiff is bringing both tort claims, and

contract claims in their Petition. Plaintiff argues that whether the tort is continuing or otherwise is an issue of prescription. Plaintiff also cites to *Marin*, finding that *Marin* holds that as long as an oilfield pit remains open, the torts committed by virtue of the construction or use of the pit continue.

As such, the Court is not inclined to dismiss this cause of action at this point.

### (10)   *Claims pursuant to Section 324A of the Restatement (Second) of Torts*

Defendant argues that Plaintiff has failed to state a claim against Chevron under the Restatement (Second) of Torts § 324A (1965). Louisiana courts have recognized the common law "Good Samaritan Doctrine" codified in section 324A, which provides as follows:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect [perform] his undertaking if
>
> (a) His failure to exercise reasonable care increases the risk of harm, or
> (b) He has undertaken to perform a duty owed by the other to the third person, or
> (c) The harm is suffered because of reliance of the other or the third person upon the undertaking.

*Bujol v. Entergy Servs., Inc.*, 2003-0492 (La. 5/25/04); 922 So. 2d 1113, 1128.

Plaintiff agrees that to recover under 324A, a plaintiff must prove that the defendant (1) undertook to render services; (2) to another; (3) which the defendant should recognize as necessary for the protection of the plaintiff or his property. Plaintiff agrees that it must prove those elements as part of its claim under 324A, however for the purpose of withstanding a Rule 12(b)(6) no proof is required at this time. Plaintiff asserts that the well-

pled allegations of the Petition are deemed true and accepted as such. Plaintiff has alleged that Defendant "has acquired other corporations or other legal entities… who otherwise assumed obligations under applicable leases or contracts, had a duty to remedy the past wrongs of those parties for whose fault or obligations they are responsible." Doc. 1-2 *Petition for Damages* ¶ 18. The Court agrees Plaintiff will be required to prove these damages at the trial of this matter, and Defendants will have the opportunity to refute them. Accordingly, the Court is not inclined to dismiss this cause of action at this point.

### (11) Breach of Stipulation for a Third Party

Defendant claims that Plaintiff fails to allege any facts sufficient to support a cause of action under the third-party beneficiary doctrine. Plaintiff argues that Mineral Code article 134 imposes third party beneficiary obligations upon the lessee defendants in this case as a matter of law.

Article 134 provides: "If a mineral lease is violated, an aggrieved party is entitled to any appropriate relief provided by law." Plaintiffs argue that the term "aggrieved party" as used in Article 134 is not qualified in any way, and as such, since Plaintiff must bear the burden of the legacy contamination on its property, it is an "aggrieved party."

Plaintiff further argues that in addition to Mineral Code article 134, the mineral leases at issue in this case are governed by the Civil and Mineral Code provisions applicable to mineral leases. Plaintiff cites three pertinent code articles to support its assertion:

> The lessee is bound… (2) to use the thing as a prudent administrator and in accordance with the purpose for which it was leased; and (3) to return the thing at the end of the lease in a condition that is the same as it was when the thing was delivered to him, except for normal wear and tear or as otherwise provided hereafter. LSA-C.C. art. 2382.

> If the lessee uses the thing for a purpose other than for which it was leased or in a manner that may case damage to the thing, the lessor may obtain injunctive relief, dissolution of the lease, and any damages he may have sustained. LSA-C.C. art. 2686.
>
> The lessee is liable for damage to the thing caused by his fault or that of a person who, with his consent, is on the premises or uses the thing. LSA-C.C. art. 2687.

Plaintiff argues that the obligation to restore the surface applies, regardless of the identity of the surface owner at the time of the damage. Plaintiff further argues that the mineral leases at issue contain language which provides that the provision of the leases shall extend to heirs, successors, and assigns of the lessor. As such, Plaintiff maintains that this language gives it the right to assert the claims in the Petition.

Accordingly, the Court finds that Plaintiff's claims for breach of stipulation for a third party pass the Rule 12(b)(6) sufficiency test, and as such they will not be dismissed at this time.

### *(12)* *Claims for unjust enrichment*

Plaintiff admits that since viable tort, contract, and Mineral Code claims have been asserted, it cannot proceed under a theory of unjust enrichment. As such, these clams will be dismissed.

### **CONCLUSION**

For the reasons set forth above, Defendant's Motion to Dismiss [Doc. 13] will be **GRANTED IN PART** and **DENIED IN PART**.

    The Defendant's Motion to Dismiss is hereby **GRANTED** with regards to Claims for civil fruits under Civil Code article 486, Claims for breach of servitude, claims for failure to provide notice under Civil Code article 2688, and claims for unjust enrichment. These claims will be **DISMISSED WITH PREJUDUDICE.**

    The Defendant's Motion to Dismiss is hereby **DENIED** with regards to the remaining claims.

    **THUS DONE AND SIGNED** in Chambers this 24th day of June, 2022.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**